UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY BUSO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ACH FOOD COMPANIES, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 17cv1872-JAH (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Doc. No. 3)** |

## INTRODUCTION

Pending before the Court is Defendant ACH Food Companies, Inc.'s ("Defendant") motion to dismiss Plaintiff Anthony Buso's ("Plaintiff") complaint. *See* Doc. No. 3. Plaintiff filed a response to Defendant's motion and Defendant filed a reply brief. *See* Doc. No. 7, 8. Having carefully considered the pleadings in this action, and for the reasons set forth below, the Court hereby GRANTS Defendant's motion to dismiss.

## BACKGROUND

Plaintiff seeks to represent a California-wide class of individuals who purchased Defendant's Fleischmann Simply Homemade® Baking Mix Cornbread product ("cornbread mix"). *See* Doc. No. 1 at ¶ 2. In June of 2017, Plaintiff purchased a box of Defendant's cornbread mix for personal consumption. *Id.* at ¶ 9. Plaintiff alleges the

packaging container was "formed or filled" in a manner to be "misleading and contained non-functional slack-fill." *Id.* Plaintiff claims the products are sold in a nontransparent container, containing approximately 50% of empty space or non-functional slack fill. *Id.* at ¶ 16, 17.

In the Complaint, Plaintiff included photos of the front of the cornbread mix packaging, along with a photo of the cornbread mix product. *Id.* at ¶ 17. The photo depicts the cornbread mix packaging net weight ("15 OZ") and serving size ("16 SERVINGS"). *Id.* Defendant also submitted photos of the rear and one side panel of the cornbread mix box. *See* Doc. No. 3-1 at 8. The side panel displays the nutritional information for the mix; and the rear depicts additional ingredients needed, along with the instructions on how to make the final product. *Id.*

The California Fair Packaging and Labeling Act ("CFPLA") makes it unlawful in some circumstances for a manufacturer to package their products in nontransparent containers that occupy nonfunctional slack fill to avoid misleading consumers as to the amount of product contained inside the package. *See* Cal. Bus. & Prof. Code § 1606.2(b)-(c). Plaintiff claims the slack fill in Defendant's cornbread mix is nonfunctional and the packaging is a violation of the CFPLA. *See generally* Doc. No. 1. To that end, Plaintiff alleges the following three claims against Defendant: violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; and violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq. Id.* at 13-19. Defendant now moves to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th

2

Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

3

Claims alleging fraud or mistake must comply with the heightened pleading requirements of Fed. R.Civ.P. 9(b) by pleading with particularly the circumstances surrounding the fraud or mistake. Rule 9(b) requires "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP,* 476 F.3D 756, 764 (9th Cir. 2007) (internal quotation marks omitted). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Semegen v. Weidner,* 780 F.2dd 727, 731 (9th Cir. 1985).

## **DISCUSSION**

Defendant moves to dismiss Plaintiff's claims for relief under the CLRA, FAL, and UCL. First, the CLRA statue prohibits any unfair or deceptive acts or practices in connection with the sale of goods to a customer. Cal. Civ. Code §1750 *et seq.* California's FAL statue prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code §17500 *et seq.* Likewise, to violate the UCL, there must be a showing of "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §17200 *et seq.* California's UCL state specifically prohibits any "unlawful, unfair, or fraudulent business act of practices." *Id.* Plaintiff's CLRA, FAL, and the fraudulent prong of the UCL claim are based on the consumer deception theory; and the unlawful and unfair prongs of the UCL claim are based on the nonfunctional slack fill theory. The Court discusses each assertion in turn.

**A. Reasonable Consumer Deception Theory**

Plaintiff's claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under this standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" (*Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995) (citation omitted). This requires more than a mere possibility that Defendant's products "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir.

4

2016) (citations omitted). "Rather, the reasonable consumer standard requires a possibility that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* at 956.

As for a false advertising claim, the "primary evidence" is the "advertising itself" *Brockey v. Moore,* 107 Cal. App. 4th 86, 100 (2003). "[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage point of a reasonable consumer." (*Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir. 1995) (citation omitted). "[W]hether a practice is 'deceptive, fraudulent, or unfair' is generally a question of fact that is not appropriate for resolution on the pleadings." *Gustavson v. Wrigley Sales Co.,* 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013). "However, in certain instances a court can properly make this determination and resolve claims based on its review of the product packaging." *Brown v. Starbucks Corp.,* No. 18cv2286 JM (WVG), 2019 WL 996399, at *3 (S.D. Cal. Mar. 1, 2019) (citations omitted); *see also Ebner,* 838 F.3d at 965 (affirming dismissal of deceptive advertising claims where the plaintiff's "claim that the reasonable consumer would be deceived" was "not plausible"); *Martinez-Leander v. Wellnx Life Scis., Inc.,* No. CV 16-08220 SJO (Ex), 2017 WL 2616918, at *8 (C.D. Cal. Mar. 6, 2017) (dismissing deceptive advertising claim based on nonfunctional slack fill where "no reasonable consumer could have been misled" by product packaging).

Here, Defendant contends that Plaintiff's CLRA, FAL, and UCL claims should be dismissed because Plaintiff cannot plausibly allege a reasonably likelihood of deception, which is required to state a claim for relief. *See* Doc. No. 3-1 at 12. Defendant argues that a reasonable consumer could not be deceived in light of the cornbread mix box accurately disclosing the net weight and yield of the mix on the packaging. *Id.* Additionally, Defendant claims the package itself cannot be considered inherently deceptive. *Id.* The Court will discuss both allegations.

### 1. Products' Net Weight and Yield Mix

Defendant relies on the Ninth Circuit's decision in *Ebner* and a subsequent application of *Ebner's* holding in *Bush v. Mondelez, Int'l, Inc.*, No. 16-cv-02460-RS, 2016

5

WL 7324990, at *2 (N.D. Cal. Dec. 16, 2016). *See* Doc. No. 3-1 at 19-20. In *Ebner,* the plaintiff alleged that the defendant's advertising and packaging were false and misleading by deceiving consumers about the amount of product contained in lip balm. *See Ebner,* 838 F.3d at 962. The plaintiff alleged the packaging was misleading because the lip product did not fully encompass the product's packaging and the packaging provided plaintiff with the misconception that a larger quantity of lip product was contained within. *Id.* at 961. Nonetheless, the Ninth Circuit concluded that the plaintiff cannot allege a plausible claim of deception when "an accurate net weight label is affixed to every[] tube and its accompanying cardboard box." *Id.* at 967. The court further reasoned that "elaborate packaging and the weighty feel of the tube is commonplace and . . . [b]ecause of the widespread nature of this practice, no reasonable consumer expects the weight or overall size of the packaging to reflect directly the quantity of product contained therein." *Id.* Similarly in *Bush*, the plaintiff alleged to have been deceived as to the amount of snack in the packaging of travel-size snack products. *Bush I,* 2016 WL 5886886, at *1. The court rejected that theory because it was "undisputed that the Go-Pak product labels disclose[d] the net weight of included product, as well as the number of cookies or crackers per container." *Id.* at *3.

In accordance with *Ebner,* several district courts have found that where the package itself discloses the actual unit counts, a "reasonable consumer" could not be misled. *See, e.g., Martinez-Leander,* 2017 WL 2616918, at *8 (where plaintiff argued that defendants' packaged herbal supplements were deceptive in slack-filled containers, the court disagreed because "[d]efendants ha[d] listed the exact number of pills each bottle contain[ed] on the labels of both the external box and the pill container"); *Bush I,* 2016 WL 5886886, at * 3; *Fermin v. Pfizer Inc.,* 215 F. Supp. 3d 209, 2112-12 (E.D.N.Y. 2016) (where purchasers of Advil alleged that they were tricked into purchasing the medicine due to the size of Advil's packaging, the court, applying California law, determined "as a matter of law, . . . it is not probable or even possible that Pfizer's packaging could mislead a reasonable consumer"

because "each of the packages in Plaintiffs' Complaint clearly display[s] the total pill-count on the label").

Here, the Court agrees with Defendant that it is unreasonable for a customer to be deceived as to the amount of product contained in the cornbread mix box. It is undisputed that the cornbread mix package discloses the product's net weight and the approximate number of servings per container. The front of the box displays both the total weight of the product ("NET WT 15 OZ"), and the number of servings contained therein ("About 16 servings"). Doc. No. 1 at ¶ 17; Doc. No. 3-2 at ¶ 5. In addition, the rear label indicates that the box contains enough cornmeal mix to make "one 8-in square 'loaf' of cornbread or 12 standard cornbread muffins." *See* Doc. No. 3-1 at ¶ 15. Plaintiff alleges that Defendant failed to consider that a reasonable consumer is "not versed in the art of inspecting and judging a product, in the process of its preparation or manufacture." *See* Doc. No. 7 at 17; *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 682 (2006) (citation omitted). However, there is no need for a reasonable consumer to be "sophisticated" when reading the cornbread mix box. Not only is the net weight of the product displayed, consumers are clearly put on notice as to the rough estimate of cornbread that can be made from the product contained within the box.

Plaintiff attempts to distinguish *Ebner* and instead focuses on *Escobar v. Just Born Inc,* No. Cv1701826BROPJWX, 2017 WL 5125740, at *1 (C.D. Cal. June 12, 2017). In *Escobar,* the plaintiff alleged that substantial empty space in an opaque candy box misled customers as to the amount of candy inside, despite the net weight of the contents being printed conspicuously on the box's exterior. *Id*. Unlike Plaintiff's instant case, *Escobar* did not disclose any details of the product aside from the net weight. *Id.* at *8. The court denied the defendant's motion to dismiss, finding that "a reasonable consumer is not necessarily aware of a product's weight or volume and how that weight or volume correlates to the product's size" and therefore may fairly assume that the listed net weight corresponds approximately with the size of the container. *Id.* at *9. However, the court critically noted: "The case is distinguishable from *Bush*, where the product's packaging indicated the

7

*number* of cookies the package contained, giving the customer a reasonable expectation of the product's contents beyond just the weight." *Id.* (emphasis in original). Nevertheless, consumer awareness of the weight to volume ratio of the cornbread mix is irrelevant because neither the volume nor the weight reveals how much prepared cornbread the mix can inevitably produce. Instead, targeted consumers can find the vital information listed on the packaging.[1]

### 2. **Products' Nontransparent Packaging is not Inherently Deceptive**

Plaintiff alleges in his Complaint that consumers are deceived by relying on the size of the cornbread mix box because the contents of the box are not transparent. *See* Doc. No. 3-1 at 20; Doc. No. 1 at 8. As a result, consumers are directly misled and deceived by the slack fill in the container. *See* Doc. No. 1 at 8. However, a reasonable consumer would not be deceived by the lack of transparent packaging. Indeed, "[n]o reasonable consumer expects the overall size of the packaging to reflect precisely the quantity of product contained therein." *Bush*, 2016 WL 5886886 at *3. Although excessive slack can potentially indicate deception in products with non-transparent packaging notwithstanding an accurate labeling, (*see Escobar*, 2017 WL 5125740 at *9), a reasonable consumer would not expect a package container to be full or even nearly full when they can feel the product in the packaging. As Defendant contends, by picking the cornbread mix off the shelf, a reasonable consumer would inevitably feel the product and notice the product shifting within the empty space of the box. *See* Doc. No. 3-1 at 15. Plaintiff has not pled any facts that would allow a reasonable consumer to draw an inference that Defendant's cornbread mix packaging is inherently deceptive.

As Plaintiff highlights, "California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurer." *Williams*, 552 F.3d at 939. However, dismissal with prejudice is appropriate if

---

[1] Plaintiff continues to otherwise rely on out-of-circuit cases that did not apply California law in support of his contention regarding unit disclosure. *See* Doc. No. 7 at 9, 11 (citing *Izquierdo v. Mondelez Int'l, Inc.,* No. 16-CV-04697 (CM), 2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) and *In re McCormick & Co., Inc., Pepper Prods. Mktg. & Sales Practices Litig.,* 215 F. Supp. 3d 51 (D.D.C. 2016).

the plaintiff is unable to plausibly allege that a reasonable consumer could be deceived or misled by the product's packaging or labeling. *Ebner,* 838 F.3d at 967. For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's CLRA, FAL, and UCL claims, to the extent they are based on the Reasonable Consumer Deception Theory, with prejudice.

**B. Nonfunctional Slack Fill Theory**

In regards to nonfunctional slack fill, Plaintiff does not allege a separate claim for violation of Business & Professional Code section 12606.2. Rather, Plaintiff alleges violation of Business & Professional Code section 12606.2 as a predicate for his UCL (unfair and unlawful prong) claim.

The CFPLA commands that "[n]o food containers shall be made, formed or filled as to be misleading" and further provides that "[a] container that does not allow the customer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack fill." Cal. Bus. & Prof. Code § 12606.2(b)-(c). Nonfunctional slack fill is the empty space in a package that is filled to substantially less than its capacity for reasons other than any one or more of the following:

(1) Protection of the contents of the package.

(2) The requirements of the machines used for enclosing the contents in the package.

(3) Unavoidable product settling during shipping and handling.

(4) The need for the package to perform a specific function, such as where packaging plays a role in the preparation or consumption of a food, if that function is inherent to the nature of the food and is clearly communicated to the customers.

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value that is both significant in proportion to the value of the product and independent of its function to hold the food, such as a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed or durable commemorative or promotional packages.

9

> (6) Inability to increase the level of fill or to further reduce the size of the package, such as where some minimum package size is necessary to accommodate required food labeling exclusive of any vignettes or other nonmandatory designs or label information, discourage pilfering, facilitate handling, or accommodate tamper-resistant devices.

Cal. Bus. & Prof. Code § 12606.2(c)(1)-(6). These six provisions are often referred to as the "safe harbor" provisions, as they serve to define the term "nonfunction slack fill" in the CFPLA by describing the only six circumstances in which a substantial amount of empty space in a package is *not* considered nonfunctional slack fill.

Plaintiff alleges that Defendant intentionally packages its product in containers composed of more than 50% nonfunctional slack fill. *See* Doc. No. 1 at ¶ 19. Plaintiff further argues that there is no indication that any of the above individual safe harbors or a combination of all justify why the 50% of slack fill exists in the product packaging. *See* Doc. No. 1 at ¶¶ 3, 17; Doc. No. 7 at 6. Defendant opposes, arguing that the cornbread mix packaging falls within the permitted category for slack fill to help "protect[] the cornmeal mix should the exterior cardboard box become compromised during manufacturing, transportation or retail." Doc. No. 3-1 at 21; Cassens Decl. at ¶ 9.

This Court has previously held that a plaintiff must affirmatively plead in his complaint that the safe harbor provisions do not apply. *See Bush v. Vigo Importing Co.,* No. 18cv1328-WQH-BGS, 2018 WL 6191390, at *6 (S.D. Cal. Nov. 28, 2018); *See also Cordes v. Boulder Brands USA, Inc.,* No. CV 18-653 PSG (JCx), 2018 WL 6714323, at *6 (C.D. Cal. Oct. 17, 2018). In this case, Plaintiff pleads generally that "[t]here is no functional reason for including 50% slack-fill" and fails to make any further allegations explaining why the slack fill is nonfunctional. *See* Doc. No. 1 at ¶ 19. The packaging of the cornbread mix allows consumers to perceive the amount of product contained within the box, even if the package is opaque. The consumer has the opportunity to assess the product and the yield amount prior to purchasing the cornbread mix. However, even if the product is interpreted as requiring a transparent container, the Complaint does not allege

that the slack fill contained is nonfunctional. The Complaint provides an umbrella statement that the "non-functional slack-fill used to package the [cornbread mix]" is used for no practical reason "other than to mislead consumers as to the actual volume" of the mix. *See* Doc. No. 1 at ¶ 27. In addition, Plaintiff's opposition simply lists the statutory provisions of Cal. Bus. & Prof. Code §12606.2(c) and directs the Court to "case authority allowing slack-fill cases to proceed past a motion to dismiss despite a defendant's assertion of one or more 'safe harbors' is substantial."[2] *See* Doc. No. 7 at 4.

However, the Court disagrees. The complaint does not allege facts to support the conclusion that the slack fill is nonfunctional, nor facts to allege the safe harbors do not apply. Plaintiff's allegations are insufficient to state a claim. *See Bush,* 2016 WL 5886886, at *2 (holding that merely reciting the statutory exceptions to nonfunctional slack fill and merely alleging that "none of these circumstances apply here," is insufficient to support a claim for unlawful packaging) (citation omitted); *Martinez-Leander v. Wellnx Life Scis., Inc.,* No. CV16-08220SJO (EX), 2017 WL 2616918, at *7 (C.D. Cal. Mar. 6, 2017) ("[A]fter reciting the language of the statue and its fifteen exceptions, Plaintiff concludes that the Defendants did not meet any exceptions, and 'lacked any lawful justification' for the empty space. These allegations, conclusory and bereft of factual support, are insufficient to state a claim.") (citations omitted). Therefore, Plaintiff fails to sufficiently allege nonfunctional slack fill in violation of the CFPLA under Cal. Bus. & Prof. Code §12606.2(c). Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's CLRA, FAL, and UCL claims, to the extent they are based on the Nonfunctional Slack Fill Theory, without prejudice.

///

///

---

[2] Plaintiff relies on several out-of-circuit cases that did not apply California law in support of his contention, along with several in-circuit cases that stated much more detailed allegations about why a product's slack-fill was nonfunctional than anything that Plaintiff has provided here. *See Escobar*, 2017 WL 512570, at *12 (denying a motion to dismiss when the complaint explained why the slack-fill made the contents *more* susceptible to breakage, why the equipment used to close the package did not require slack-fill, and why the contents did not settle).

11

## **CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss is **GRANTED.**
2. Plaintiff's claims under the UCL, FAL, and CLRA with regards to the Reasonable Consumer Deception Theory are **DISMISSED WITH PREJUDICE**.
3. Plaintiff's claims under the UCL, FAL, and CLRA with regards to the Nonfunctional Slack Fill Theory are **DISMISSED WITHOUT PREJUDICE**.
4. Plaintiff may file an amended complaint on or before **June 5, 2020**.

**IT IS SO ORDERED.**

DATED: April 20, 2020

_____
Hon. John A. Houston
United States District Judge